## Cochrane's Petition.

*Naturalization—Continuity of residence in the United States—Service in Canadian Army—Act of Congress of June 29, 1906.*

1. The petitioner for naturalization came to Philadelphia Jan. 23, 1906, married and established his home in this city, where he lived continuously until Feb. 25, 1917, when he took out his first papers. In May, 1918, he enlisted in the Canadian Army, and after serving abroad, was honorably discharged in July, 1919, when he immediately returned to his home in Philadelphia: *Held*, that there was no break in the continuity of his residence in Philadelphia, and he was entitled to naturalization.

2. Persons who knew the petitioner while living in Philadelphia were competent vouchers as to his reputation and moral character, although they had not seen him from May, 1918, to July, 1919, during his service in the Canadian Army.

3. The petitioner's honorable discharge was sufficient evidence of good character during the period of service in the Canadian Army.

The Act of Congress of June 29, 1906, and amendments (34 Stat. at L., part 1, page 596), considered.

Petition for naturalization. Q. S. Phila. Co., Misc. Division, No. 8277.

GORDON, J., Dec. 13, 1922.—The testimony of the petitioner and his two supporting witnesses discloses in this matter that the petitioner came to this country on Jan. 23, 1906. On Feb. 25, 1917, he took out his first papers, and the matter is now before the court upon petition for naturalization as a citizen.

After his arrival in this country, the petitioner married, and in May, 1918, was living at No. 3050 North Franklin Street, in this city, with his wife and family. After the declaration of the existence of a state of war between the United States and Germany, the petitioner attempted to enlist in the American Army, and was rejected because of bad teeth. This occurred shortly before May of 1918. He then went to Canada, enlisted in the Canadian Army, saw service in France, and was honorably discharged in July of 1919. His two vouchers, Alexander W. Clark and John Haney, testified that they have known the petitioner for many years in this city, the former since August of 1907, and the latter since 1911; that he bears an excellent reputation and is of good moral character, and, in their opinion, is in every way qualified to be a citizen of the United States. They admitted, however, that they had not seen him during the time from May, 1918, to July, 1919, when he was serving in the Canadian Army, in the World War.

The representative of the Federal Government admits that the petitioner possesses all the qualifications requisite for admission to citizenship, but objects to his admission as a citizen on the grounds that because of his enlistment and service in the Canadian Army, between the dates already mentioned, he has not met the requirements of section 4, par. 2, of the Act of Congress of June 29, 1906, and the amendments thereto (34 Stat. at L., part 1, page 596), in that he was not a resident of the United States for at least five years continuously preceding the date of the filing of his petition; and in that his vouchers, by reason of his absence in the Canadian Army, are not competent to testify that they personally know him to have been a resident of the United States continuously for a period of five years preceding the filing of his application, and that during such period he has been a person of good moral character.

It is well settled that the language of the Act of Congress of June 29, 1906, 34 Stat. at L. 596, "the applicant to be a resident of the United States for a period of at least five years continuously," does not mean a continuous and uninterrupted physical residence within the territorial boundaries of the United States for that period. Such an interpretation of this language would be a

manifest injustice, and it is believed that the law-making body never intended such a result. Such an interpretation certainly would not be within the spirit of the statute, and it is the duty of the court to interpret statutes in the light of their true spirit and intent, where such interpretation is not manifestly in contravention of their plain literal meaning: The United States *v.* Mulvey, 232 Fed. Repr. 513; The United States *v.* Cantini, 212 Fed. Repr. 925. In the latter of these cases it was said by McPherson, J., of the District Court: "The continuous character of an alien's residence would thus be fatally interrupted by the briefest visit of pleasure, or friendship, or business, beyond the boundaries of the United States; and rules of construction admonish us that we are not to suppose that Congress intends any statute to produce an unreasonable result, unless the language used be such as to leave no fair doubt that such a result was the object of the law. In the Act of 1906 (Act of June 29, ch. 3592, § 4, par. 4, 34 Stat. at L. 596, U. S. Comp. Stat. Supp., 1911, page 531, the phrase in its common and ordinary use appears to have an elastic meaning, so elastic in fact that we may easily imagine two sets of circumstances, in each of which the intention of the alien would be the same, although the conclusion would be different. For example, let us suppose that Cantini's absence in Italy had been due to the fact that he had been immediately arrested in that country on a groundless charge, and had been detained in prison for the period in question. Having left the United States with the intention of returning in a short time, and having been prevented by force from carrying his intention into effect, the continuous character of his residence would not be disturbed. On the other hand, it would be idle to contend that his residence had not been abandoned in fact, if he had bought a farm, established a family and a home, and entered the Italian Army as a volunteer, although he might have continued to cherish the intention of returning. In a word, the question must of necessity be a question of fact in any given case, and the mere declaration by the alien that he intended to maintain his residence here may not be sufficient to overcome the persuasive facts that point in an opposite direction."

The true test is whether the circumstances of the particular case indicate the intention of the petitioner to continue his permanent residence here, notwithstanding his removal for a time. In this connection, the length of his absence is of importance, but it alone cannot determine the question. All the petitioner's acts must be considered together, and his *bona fide* intention gathered from them as a whole.

In the case now before us the petitioner came to this country twelve years ago. He married here and established a family. Before the declaration of the existence of a state of war with Germany, he had taken out his first papers and declared his intention and desire to become a citizen. Thereafter, he endeavored to enlist in the American Army, and failing to do so for physical reasons, he left his wife and family here and enlisted in the Canadian Army. Upon his discharge from the Canadian Army, he immediately returned to his wife and family at the same residence which he had occupied before the war, and which he stated he considered his permanent abode. All of these facts are persuasive in support of the petitioner's declared intention to retain his residence in this city, notwithstanding his absence from May, 1918, to July, 1919.

We are of opinion that there was no break in the continuity of his residence in this country during his service in the Canadian Army, and we, therefore, hold that the petitioner has complied with the provisions of the Act of Congress in this respect.

2 D. & C.

Cochrane's Petition.

Upon the second objection presented by the Government to the granting of this petition for naturalization, we are of opinion that the petitioner's vouchers are qualified to speak respecting his moral character and qualifications to be admitted as a citizen during the entire time they have known him, including the period of time during which he served in the Canadian Army, and from which he obtained an honorable discharge. Service in the World War, in the Army of the United States or of its allies, concluded by an honorable discharge, is sufficient assurance of the good moral character of the applicant during the period covered by such services. To hold otherwise would be to reflect upon the motives and the character of the service rendered, and would result in unfairly penalizing a person who performed such services. The citizens who knew this applicant both before and after his service in the Canadian Army are competent to vouch for his moral character, and the service itself is evidence of good moral character.

In deciding the matter now before us in the light of the decisions, and applying the law to the facts presented in support of the petition, we cannot sustain the objections of the Government to the application of the petitioner to be naturalized as a citizen, and the petition is, therefore, granted.